**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MLB Sales Incorporated,<br><br>        Plaintiff,<br><br>v.<br><br>RK Gems LLC, et al.,<br><br>        Defendants. | No. CV-23-01526-PHX-DWL<br><br>**ORDER** |

Pending before the Court are a pair of motions for default judgment filed by Plaintiff MLB Sales Inc. ("Plaintiff"). (Docs. 12, 16.) For the following reasons, both motions are granted in part and denied in part.

**BACKGROUND**

On August 1, 2023, Plaintiff filed the complaint. (Doc. 1.) In broad strokes, the complaint alleges that Plaintiff is "a leading watch seller for all major brand names"; that Plaintiff previously sold "numerous watches and jewelry" to Defendant RK Gems LLC ("RK Gems"), which is an Alaska-based company owned and operated by Defendant Pruthi Belavadi ("Belavadi"); that in January 2023, Belavadi (on behalf of RK Gems) orally agreed to purchase "numerous timepieces," including two Rolex watches, from Plaintiff for $70,144 and provided "what appeared to be two cashiers' checks made out to [Plaintiff] for $15,575 and $28,000, along with a wire transfer for $8,963, as a down payment on the agreed-upon total price for the inventory"; that Plaintiff allowed Belavadi to leave the store with the two Rolex watches, with "[t]he remainder of the inventory [to

be] sent to Defendants once they provided the balance of the payment"; and that when Plaintiff later attempted to cash the cashiers' checks, it learned that the checks were fake and that Belavadi had reversed or otherwise falsified the wire transfer. (*Id.* ¶¶ 2-3, 8, 16-23, 29-30.) Based on these allegations, Plaintiff asserts various tort and contract claims against RK Gems and Belavadi (together, "Defendants"). (*Id.*)

On October 31, 2023, Plaintiff filed proof of service as to RK Gems. (Doc. 7.)

That same day, Plaintiff filed a motion for permission to serve Belavadi via alternative means and to extend the service deadline as to Belavadi. (Doc. 8.) That motion was granted. (Doc. 9.)

On December 7, 2023, Plaintiff filed an application for entry of default as to RK Gems. (Doc. 10.) The following day, the Clerk entered the default. (Doc. 11.)

On December 21, 2023, Plaintiff filed the pending motion for default judgment as to RK Gems. (Doc. 12.) RK Gems has not responded.

On January 5, 2024, Plaintiff filed proof of service (via the alternative means previously authorized by the Court) as to Belavadi. (Doc. 13.)

On January 19, 2024, Plaintiff filed an application for entry of default as to Belavadi. (Doc. 14.) A few days later, the Clerk entered the default. (Doc. 15.)

On January 23, 2024, Plaintiff filed the pending motion for default judgment as to Belavadi. (Doc. 16.) Belavadi has not responded.

**DISCUSSION**

I. <u>Legal Standard</u>

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although the Court should consider and weigh relevant factors, it "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The relevant factors include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on

the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

II.     *Eitel* Factors

    A.     **Possible Prejudice To Plaintiff**

The first *Eitel* factor weighs in favor of default judgment. If Plaintiff's motions were denied, Plaintiff would be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

    B.     **Merits Of Claims And Sufficiency Of Complaint**

The second and third *Eitel* factors favor default judgment where the complaint sufficiently states a plausible claim for relief under the Rule 8 pleading standard. *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978).

Here, the factual allegations in the complaint can be summarized as follows: "RK Gems [via Belavadi] deliberately walked into Plaintiff's luxury watch store, blatantly lied about wanting to purchase significant inventory to help in opening a new store, orally contracted to purchase $70,144 in inventory with more to follow, stole two high-value watches from [Plaintiff] in exchange for fraudulent cashiers' checks and a wire transfer that RK Gems knew would not be valid or would be cancelled once it departed with the goods, and fled to Alaska. Plaintiff is left with two missing luxury watches, a breached contract for over $70,144 worth of goods, and significant attorney and other fees." (Doc. 12 at 5.) For the reasons discussed in Plaintiff's default judgment motions (Doc. 12 at 6-14; Doc. 16 at 7-14), those allegations are sufficient to establish Defendants' liability as to (at a minimum) Plaintiff's claims for breach of contract, conversion, and fraud.

Those allegations are also sufficient to establish liability with respect to Plaintiff's claim for punitive damages, because they plausibly establish that Defendants engaged in the sort of intentional, egregious misconduct that is necessary to support an award of punitive damages under Arizona law. *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz.

1986) ("[T]o obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind."); *Hilgeman v. Am. Mortgage Sec., Inc.*, 994 P.2d 1030, 1036-38 (Ariz. Ct. App. 2000) (noting that, under Arizona law, "[t]o recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an evil mind, that is, with intent to injure or defraud, or deliberately interfere with the rights of others, consciously disregarding the unjustifiably substantial risk of significant harm to them," and upholding grant of default judgment as to liability for punitive damages while reversing as to amount).[1]  Accordingly, the second and third *Eitel* factors weigh in favor of default judgment.

### C. Amount At Stake

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct.

Although the amount being sought here is not insignificant—Plaintiff seeks "sum certain damages due to lost profits total[ing] $70,144" (Doc. 16 at 15) as well as "punitive damages in the form of at least three times the actual damages of $70,144 with 5% interest ($73,651), or $220,953.60" (Doc. 12 at 15)—those sums are commensurate with the seriousness of Defendants' conduct.  Thus, the fourth *Eitel* factor is either neutral or weighs, at most, only weakly against default judgment.

…

…

---

[1] Some states seem to follow the rule that "conduct sufficient to warrant punitive damages is not regarded as admitted by default." *Matter of Gober*, 100 F.3d 1195, 1205 (5th Cir. 1996) (applying Texas law). *See also Alutiiq Int'l Solutions, LLC v. OIC Marianas Ins. Corp.*, 149 F. Supp. 3d 1208, 1215 (D. Nev. 2016) (citing *Gober* for the proposition that "[w]hen punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default"). Nevertheless, as noted, Arizona law (which applies here) authorizes default judgment on the issue of punitive-damage liability. *Hilgeman*, 994 P.2d at 1032 ("We also affirm [the default judgment] insofar as AMS's liability, the compensatory damage award against it, and the Hilgemans' entitlement to punitive damages are concerned. But because of the unique constitutional safeguards relating to punitive damage awards and because the record is insufficient for us to evaluate or uphold that award, we vacate that aspect of the trial court's order and remand for a reported evidentiary hearing on the amount of punitive damages to be assessed against AMS.").

### D. **Possible Dispute Concerning Material Facts**

Given the sufficiency of the complaint and Defendants' lack of participation in this action, "no genuine dispute of material facts would preclude granting [Plaintiff's] motion." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, the fifth *Eitel* factor favors default judgment.

### E. **Excusable Neglect**

As previously noted, "[i]t appears that Belavadi [was] actively evading service" before the issuance of the order authorizing alternative service. (Doc. 9 at 4.) It also appears that Belavadi, or some other individual associated with RK Gems, initially engaged in correspondence with Plaintiff about reaching a settlement in this case before ceasing communications. (*Id.* at 2 ["Plaintiff has also engaged in recent settlement discussions with an unspecified individual using an RK Gems email account, but that individual 'has been careful to avoid providing a name.'"].) Thus, even more so than in the usual case involving a defendant who failed to appear after being served, the sixth *Eitel* factor favors default judgment.

### F. **Policy Favoring Merits Resolution**

The last *Eitel* factor usually weighs against default judgment given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b), however, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

### G. **Weighing Of *Eitel* Factors**

On balance, the *Eitel* factors favor default judgment. The Court therefore concludes that default judgment as to liability is appropriate.

III. Damages And Other Categories Of Relief

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes,* 559 F.2d at 560. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A plaintiff must "prove

all damages sought in the complaint." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "[A] default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

A. **Compensatory Damages**

Plaintiff seeks an award of $70,144 in compensatory damages. As explained below, Plaintiff is only entitled to a portion of this sum on the current record.

As discussed in earlier portions of this order, the parties entered into a contract under which Plaintiff would sell "numerous timepieces," including two Rolex watches, to Defendants for $70,144. After making what appeared to be a partial down payment, Belavadi was allowed to leave the store with the two Rolex watches, but the remaining timepieces remained in Plaintiff's possession.

As for the two Rolex watches, the calculation of damages is straightforward. The complaint alleges that the two Rolex watches were worth $33,985. (Doc. 1 ¶ 21.) Plaintiff no longer has the watches and didn't receive any payment for them. Thus, no additional evidence is needed to establish Plaintiff's entitlement to $33,985 in breach-of-contract and tort damages related to the two Rolex watches—it is a "liquidated sum or capable of mathematical calculation." *Davis*, 650 F.2d at 1161. Courts have concluded that default judgment may be ordered without the introduction of additional damages-related evidence under these circumstances. *Cf. Hayden v. Prestige Horizons*, 2020 WL 6203517, *2 (D. Ariz. 2020) ("In light of the contractual nature of the claim against the Defendants and because of the sum certain amounts owed on the motorhome loan, there is little to no likelihood of a dispute concerning material facts with the action or damage award . . . . [T]he Court finds the entry of default judgment appropriate in this case without oral argument or an evidentiary hearing."); *Solar Liberty Energy Systems, Inc. v. Suacci*, 2013 WL 12415747, *7 (S.D. Cal. 2013) ("Plaintiff's requested damages are a sum certain. Significantly, the requested amount directly correlates to Defendants' alleged breach of contract. It reflects the amount Plaintiff paid to Defendants for products it did not receive

1 and the shipping costs Defendants failed to pay, along with the resulting costs and
2 interest.").

3 However, Plaintiff is not, on this record, entitled to any damages in relation to the
4 other timepieces. Presumably, the contracted-for sales price for those timepieces was
5 $36,159 (*i.e.*, the overall purchase price of $70,144 minus the $33,985 value of the two
6 Rolex watches). However, Plaintiff never lost possession of those timepieces—as alleged
7 in the complaint, "[t]he remainder of the inventory was to be sent to Defendants once they
8 provided the balance of the payment. [Plaintiff] placed the additional selections by
9 Defendants aside, so that they would be taken off display and would be unavailable for
10 viewing or sale." (Doc. 1 ¶¶ 23-24. *See also* Doc. 12 at 2-3 ["The remaining inventory
11 selected by RK Gems was taken off the showcase floor and placed on reserve so that it
12 would be unavailable for viewing or sale by or to other Plaintiff customers."].) Thus,
13 Plaintiff is not automatically entitled to $36,159 in compensatory damages in relation to
14 those timepieces.

15 Under § 2-708 of the Uniform Commercial Code ("UCC"), which Arizona has
16 adopted, the default rule is that "the measure of damages for non-acceptance or repudiation
17 by the buyer is the difference between the market price at the time and place for tender and
18 the unpaid contract price together with any incidental damages." *See* A.R.S. § 47-2708(A).
19 Additionally, if such damages are "inadequate to put the seller in as good a position as
20 performance would have done," a seller may seek "the profit (including reasonable
21 overhead) which the seller would have made from full performance by the buyer, together
22 with any incidental damages provided in this chapter (§ 47-2710), due allowance for costs
23 reasonably incurred and due credit for payments or proceeds of resale." *Id.* § 47-2708(B).
24 Here, Plaintiff has made no effort to establish the market value of the other timepieces or
25 otherwise establish the amount of profit (as opposed to revenue) it would have made from
26 their sale to Defendants. Nor has Plaintiff attempted to make the showings necessary for
27 a seller of undelivered goods to recover the full contract price (without any offset) as
28 damages. *See, e.g.*, A.R.S. § 47-2709; *Karen v. Crane*, 578 N.Y.S.2d 85, 86-87 (N.Y. Civ.

1 Ct. 1991) ("In regard to the undelivered goods, . . . for a seller of goods to recover under
2 [§ 2-709 of the UCC], the seller must affirmatively allege and prove as a condition
3 precedent in an action for the purchase price that the goods could not readily be resold
4 . . . . When a seller is not entitled to maintain an action for the price under section 2-709
5 of the [UCC], a seller may nevertheless be awarded damages for a buyer's non-compliance
6 under section 2-708 of the [UCC] . . . [under which] the burden of proving market price or
7 the market value of goods refused by the buyer rests on the seller.") (citations omitted).

### B. Punitive Damages

Plaintiff also seeks $220,953.60 in punitive damages. (Doc. 12 at 15.) That request, like the request for compensatory damages related to the retained timepieces, is insufficiently supported on this record.

As an initial matter, the complaint fails to specify the amount of punitive damages being sought—it only states that Plaintiff seeks punitive damages "to be determined" or "in an amount appropriate to punish [Defendants]" or "in amounts to be determined at trial." (Doc. 1 ¶¶ 86, 119 & at 14.) Because those formulations are not for a "liquidated sum or capable of mathematical calculation," it is questionable whether an award of punitive damages could be imposed via default judgment based solely on the complaint.

Another flaw is that Plaintiff calculated its request for $220,953.60 in punitive damages by multiplying the requested compensatory damage award by three. But as discussed in Part III.A above, Plaintiff has not established an entitlement to the full amount of requested compensatory damages. Nor has Plaintiff established that the same amount of punitive damages would be warranted even if the size of the underlying compensatory damage award were reduced (which would result in a larger ratio and implicate the constitutional concerns that come with a larger ratio).

Finally, and most important, Plaintiff has not established an entitlement to any award of punitive damages, let alone an award of $220,953.60, because Plaintiff's submissions do not address all of the relevant considerations that, under Arizona law, must be considered when calculating and reviewing the size of a punitive damage award. As

Arizona courts have explained:

> The Due Process clause of the U.S. Constitution imposes a substantive limit on the size of punitive damages awards. To monitor that substantive limit, Arizona law provides several procedural protections to assure that an award of punitive damages is justified and reasonable . . . . [Any] award is then subject to careful review by an appellate court, which considers: (1) the proportionality of the award to the wrongdoer's financial position to ensure that the goals of punishment and deterrence are served without financially devastating the defendant; (2) the reprehensibility of the defendant's conduct, including the duration of the misconduct, the defendant's awareness of the risk of harm, and any concealment; and (3) the profitability to the defendant of the wrongful conduct.

*Hilgeman*, 994 P.2d at 1037-38 (cleaned up).

Here, although the factual allegations in the complaint are sufficient to establish the reprehensibility of Defendants' misconduct (and, likely, the profitability of Defendants' misconduct), there is no mention of Defendants' wealth and financial condition. Nor has Plaintiff introduced any evidence on that topic via the default-judgment process. Courts have concluded that default judgment cannot be entered in the absence of such evidence, at least where (as here) the underlying state law giving rise to the punitive-damage claim requires consideration of the defendant's wealth and financial condition. *See, e.g., Hilgeman*, 994 P.2d at 1038 ("The record in this case neither permits our evaluation of [the required Arizona] factors nor reflects that the trial court considered them. . . . That the award was entered in a default context does not eliminate the need for effective appellate review of punitive damages to ensure they comport with constitutional standards. . . . In view of the rigorous scrutiny given to punitive damage claims in a trial context and to punitive damage awards on appeal, it would be incongruous to give them less attention and scrutiny in a default context. Rather, when, as here, the record is inadequate for meaningful evaluation of the constitutionality of a punitive damage award, the award should be set aside."); *Ramser v. Laielli*, 2017 WL 4169721, *3 (S.D. Cal. 2017) ("[T]he Court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of a defendant's financial condition. . . . Because the

- 9 -

record lacks evidence of Laielli's net worth or wealth, the Court declines to award punitive damages.") (cleaned up); *Sterling Cross Defense Systems, Inc. v. Dolarian Capital, Inc.*, 2015 WL 12697064, *7 (E.D. Cal. 2015) ("[T]he Court has been provided no information to determine Defendant's wealth. Without that information, the Court cannot determine whether the proposed punitive damages amount is sufficient to deter further misconduct, on one hand, or excessive, on the other. . . . Plaintiff has failed to make an adequate showing for the Court to be able to determine an appropriate figure for a punitive damages award. As a result, this Court can only enter partial default judgment as to . . . punitive liability. The specific punitive damages amount is left open.") (citations omitted).

### C. **Injunctive Relief**

In addition to seeking compensatory and punitive damages, Plaintiff requests a "[p]reliminary and permanent injunction against RK Gems, its employees, or investors, from using, distributing, copying, selling, or otherwise possessing the two Rolex watches." (Doc. 12 at 18.)

A compensatory damage award of $33,985 fully compensates Plaintiff for the loss of the two Rolex watches. Having been fully compensated for that loss, Plaintiff has no further stake in what Defendants do with the watches. Thus, the request for injunctive relief is denied.

### D. **Attorneys' Fees**

Finally, Plaintiff requests "attorneys' fees of approximately $20,378 for the expenses of litigation (including drafting of a detailed complaint, motions for entry of default, and Motions for Default Judgment), drafting of settlement documentation and payment plans, attempts to track down Defendants' physical location(s), and the months' extraordinary waste of time engendered by Defendants' countless correspondences and negotiations with counsel promising to pay in order to buy more time, but ultimately refusing to do so." (Doc. 16 at 15.) In a footnote, Plaintiff adds: "If the Court grants this Motion for Default Judgment, Plaintiff will, upon request, submit a *China Doll* affidavit under Arizona law which will delineate its attorneys' fees claim, or simply provide the

relevant billing records." (*Id.* at 15 n.4.)

This request is denied without prejudice. Plaintiff may very well be entitled to recover its reasonable attorneys' fees, but the current request is undeveloped and does not comply with the requirements set forth in LRCiv 54.2.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motions for default judgment (Docs. 12, 16) are **granted in part and denied in part**.

2. Although Plaintiff has now established an entitlement to a default judgment against RK Gems and Belavadi, jointly and severally, in the amount of $33,985, the Court will not enter judgment at this time so as to enable Plaintiff, if it so chooses, to further pursue its claims for compensatory damages related to the other timepieces and for punitive damages. To that end, Plaintiff must, within 21 days of the issuance of this order, file either (a) a supplemental brief in support of its claims for those categories of damages and supporting evidence; or (b) a notice that it does not intend to seek those categories of damages.

3. Following the resolution of those issues, the Court will enter judgment. Within 14 days after entry of judgment, Plaintiff may file a motion for attorneys' fees. Any such request must comply with LRCiv 54.2.

Dated this 9th day of February, 2024.

Dominic W. Lanza
United States District Judge